IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEAN MILLER,

       Plaintiff,

   v.

BUTTE COUNTY, BUTTE COUNTY
SHERIFF'S DEPARTMENT, PERRY
RENIFF, SHAROL STRICKLAND,
CALIFORNIA FORENSIC MEDICAL
GROUP, INC., and DOES 1 through
20, inclusive,

       Defendants.
_____/

No. 2:06-CV-0489 JAM KJM

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT

Plaintiff Jean Miller ("Miller") brought this action
against defendants Butte County ("County"), Butte County
Sheriff's Department ("Sheriff's Department"), Butte County
Sheriff Perry Reniff ("Sheriff Reniff"), Sharol Strickland
("Strickland") (collectively "Defendants") and California
Forensic Medical Group, Inc. ("CFMG") alleging civil rights
violations against Defendants and CFMG pursuant to 42 U.S.C. §

1

1983 and a state law medical malpractice claim against CFMG. Defendants now move for summary judgment or, in the alternative, summary adjudication pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.  Miller opposes the motion.  For the reasons set forth below, Defendants' motion is GRANTED.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 14, 1999, Miller was involved in a confrontation with several Butte County police officers while they attempted to tow her vehicle.  According to Miller, two of the officers, without warning, threw her to the ground, handcuffed her, and stunned her with a stun gun at least seven times.  The officers, on the other hand, claim that Miller physical attacked them. Following this incident, the Butte County District Attorney filed a three count misdemeanor complaint against Miller charging her with resisting arrest, delaying and obstructing a police officer, and two counts of battery against a police officer.  On August 11, 2000, Miller filed a civil rights action in this Court against Butte County, Butte County Sheriff Scott Mackenzie, and the officers involved in the April 14, 1999 incident.[2]  On May 2, 2003, Miller was convicted on all three

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. L.R. 78-230(h).

[2] This case is currently set for trial in January 2009.

counts following a jury trial.  She was sentenced to sixty days in jail and placed on formal probation.

On October 23, 2003, following a jury trial, Miller was convicted of trespass, resisting, and assault and battery, arising out of an incident in which Miller assaulted employees of the Butte County Mental Health Offices.  Miller then filed a motion for new trial.  On February 20, 2004, Judge William P. Lamb ("Lamb") of the Butte County Superior Court found that Miller had violated the terms of her formal probation (imposed following her May 2003 conviction) by failing to follow the instructions of her probation officer and report to probation as directed.  Judge Lamb remanded her to the custody of the Butte County Sheriff's Department and authorized her participation in "[a]lternative programs . . . within the discretion of the jail," which included the Sheriff's Work Alternative Program ("SWAP").  Miller was then taken to the Butte County Jail and booked.  After Miller promised to appear at the SWAP office on March 9, 2004, she was released.

SWAP is designed to relieve overcrowding in the jail.  A court may state whether a work release program is authorized, but the Sheriff has the ultimate power to decide who may or may not participate in SWAP.  The program allows individuals that have been sentenced to jail to serve their time working in the community.  Inmates convicted of certain crimes involving

violence or sexual acts that the Sheriff's Office considers to be serious offenses will not be placed in SWAP without the prior approval of the Programs Sergeant.  In addition, SWAP eligibility is determined by public safety.  A correctional technician at the Sheriff's Department normally decides whether or not an individual is allowed to participate in SWAP.  An individual is not considered to be admitted into SWAP until they attend orientation and pass an eligibility interview, are given a work placement, and promise to appear at the designated work assignment.

On February 25, 2004, after Miller agreed to waive her motion for new trial, Judge Lamb suspended the imposition of her sentence and placed her on informal probation, to be served concurrently with the modified probation that had been ordered on February 20, 2004.  Judge Lamb specifically stated that Miller was "to serve 60 days in the county jail to run concurrent with the 60 days imposed in the companion case of weekends and SWAP are authorized."  Judge Lamb noted that if Miller successfully completed the 60 days of SWAP in the companion case, it would be deemed completion of the 60 days in that case.

On March 9, 2004, Miller reported to the Butte County Jail to begin the SWAP program, but was informed by a Sheriff's Department employee that she would be taken to jail instead.

Miller protested claiming that she had a copy of the sentencing document, which indicated that she had been sentenced to the SWAP program.  The employee, however, told her that it "didn't matter" and that he had instructions from Sheriff Reniff to take her to jail.  After Miller completed a medical pre-screening revealing that she was taking multiple medications, including Lithobid for anxiety and other mental conditions, she was placed in jail.  On or about the second evening of her incarceration, Miller suffered from a "seizure-like" episode.  CFMG, which contracts with the Butte County Jail to administer medical services, rendered medical care to Miller.  It was later determined that Miller had toxic levels of Lithium in her blood stream requiring her intake of Lithobid to be reduced to normalize the levels.  Although Miller concedes that she voluntarily refused to take some of her medications during her incarceration, she maintains that her condition deteriorated over the course of her 35-day incarceration because of a complete lack of medical care, including the failure of jail medical staff to provide her with medication.  Accordingly to Miller's treating physician, however, a lack of medication would not have caused the seizure-like symptoms experienced by Miller.  Miller has not suffered a seizure or experienced seizure-like symptoms following her incarceration at Butte County Jail.  Nor

did she ever suffer a seizure or experience seizure-like symptoms prior to her incarceration at Butte County Jail.

On March 9, 2006, Miller filed the instant action alleging civil rights violations against Defendants and CFMG and a state law claim against CFMG.  Specifically, Miller alleges that Defendants violated her constitutional rights under the First, Fourth, Eighth and Fourteenth Amendments by: (1) jailing her without a valid order; (2) denying her adequate medical care; (3) denying her bodily privacy; and (4) jailing her in retaliation for a lawsuit filed against Butte County and its employees.  In addition, Miller alleges that CFMG violated her constitutional rights under the Eighth and Fourteenth Amendments by denying her adequate medical care.  Miller also alleges a state law medical malpractice claim against CFMG.  On July 18, 2008, Defendants filed a motion for summary judgment or, in the alternative, summary adjudication.  On August 6, 2008, Miller filed an opposition.[3]

///

///

///

_____

[3] The Court notes that Miller filed her opposition three days late and provided no explanation to this Court for the late filing.  The Court has, nevertheless, considered Miller's arguments in opposition to Defendants' motion for summary judgment.

II. OPINION

A.   <u>Legal Standard</u>

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Where the nonmoving party will have the burden of proof on an issue at trial, the movant's burden may be discharged by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.  <u>Id.</u> at 325. "Summary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial."  <u>Miller v. Glenn Miller Productions, Inc.</u>, 454 F.3d 975, 987 (9th Cir. 2006) (internal quotation marks omitted).

If the moving party sustains its burden, the burden then shifts to the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  <u>Celotex</u>,

7

477 U.S. at 324.  "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." <u>Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.</u>, 210 F.3d 1099, 1103 (9th Cir. 2000).  Summary judgment is appropriate if, viewing the evidence and the inferences therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.  <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135, 1137 (9th Cir. 1989).

B.   <u>Sheriff's Department Liability</u>

     Defendants argue that the Sheriff's Department was improperly named as a separate defendant in this action because it is a municipal department within the county and not a separate legal entity.  The Court agrees.  Because the Sheriff's Department is a municipal department of Butte County, it is not a properly named defendant in this action.  <u>See</u> <u>Vance v. County of Santa Clara</u>, 928 F.Supp. 993, 995-96 (N.D. Cal. 1996) (municipal departments are not "persons" under § 1983).  Accordingly, the Court dismisses the Sheriff's Department from this action.

///

///

///

C.   <u>Eleventh Amendment Immunity</u>

Defendants argue that Sheriff Reniff is immune from liability by virtue of the Eleventh Amendment and the doctrine of sovereign immunity.

Section 1983 provides for a damages action against "[e]very person" who, while acting under color of law, subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  The federal Constitution's Eleventh Amendment grants sovereign immunity from such suits not only to each of the fifty states but also to state officers.  <u>See</u> <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989).  This is because a suit against a state officer "is no different from a suit against the State itself."  <u>Id.</u>; <u>see</u> <u>Doe v. Lawrence Livermore Nat'l Lab.</u>, 131 F.3d 836, 839 (9th Cir. 1997) (a federal action for monetary damages against an individual State official acting in his official capacity is barred by the Eleventh Amendment in the same way that an action against the State is barred).  The United States Supreme Court has held that cities, counties, and local officers sued in their official capacity are themselves "persons" for purposes of § 1983 and, although they cannot be held vicariously liable under § 1983 for their subordinate officers' unlawful acts, they can be held directly liable for constitutional violations carried out under their own

regulations, policies, customs, or usages by persons having "final policymaking authority" over the actions at issue. McMillian v. Monroe County, 520 U.S. 781, 784-85 (1997). However, states and state officers sued in their official capacity are not considered persons under § 1983 and are immune from liability under the statute by virtue of the Eleventh Amendment and the doctrine of sovereign immunity.  Howlett v. Rose, 496 U.S. 356, 365 (1990).  Whether this immunity applies to a particular governmental official is a question of federal law, but the "inquiry is dependent on an analysis of state law." McMillian, 520 U.S. at 786.

The framework for determining whether an official qualifies for Eleventh Amendment immunity in § 1983 claims was established by the United States Supreme Court in McMillian, 520 U.S. 781. First, a court should "ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue."  Id. at 785.  Second, the actual function of a governmental official, in a particular area, depends "on the definition of the official's functions under relevant state law."  Id. at 786.  While state law serves as valuable evidence for this determination, federal courts need not blindly accept the California Supreme Court's "balancing of the different provisions of state law in determining liability under § 1983."  Weiner v. San Diego County, 210 F.3d 1025, 1029

(9th Cir. 2000).  The federal analysis of state law to determine § 1983 liability includes an inquiry into the "state's constitution, statutes, and case law."  Brewster v. Shasta County, 275 F.3d 803, 806 (9th Cir. 2001).  Thus, while "[t]he California Supreme Court is the ultimate interpreter of California state law[,]" Weiner, 210 F.3d at 1028-29, when determining a county's liability under McMillian, federal courts engage in an "independent analysis of California's constitution, statutes and case law."  See Streit v. County of Los Angeles, 236 F.3d 552, 561 (9th Cir. 2001).  Because § 1983 liability implicates federal, not state law, California case law is not controlling.  Id. at 564; see Owen v. City of Independence, 445 U.S. 622, 647 n. 30 (1980) ("Municipal defenses-including an assertion of sovereign immunity-to a federal right of action are, of course, controlled by federal law.").  The determination of whether a county official acts for the state or for the county is a question of law.  See Jett v. Dallas Independent School Dist., 491 U.S. 701, 737 (1989).

     In the present case, Defendants argue that Sheriff Reniff is entitled to Eleventh Amendment immunity because he was acting on behalf of the state rather than the county with respect to the particular acts alleged to have caused the constitutional deprivations at issue in this case.  The Court disagrees.  In Streit, the Ninth Circuit specifically held that when California

11

sheriffs function as managers of jails, they are county

officials subject to liability under § 1983.  <u>Streit</u>, 236 F.3d

at 561 (reviewing California's constitution, codes, and case

law, and concluding that a sheriff acts on behalf of the county

in "the oversight and management of the local jail"); <u>see also</u>

<u>Cortez v. County of Los Angeles</u>, 294 F.3d 1186, 1192 (9th Cir.

2002) (reviewing California's constitution, codes, and case law,

and concluding that a sheriff acted on behalf of the county in

segregating inmates identified as gang members, as he engaged in

this conduct pursuant to his authority as the administrator of

the county jail and custodian of the inmates within it).

Because Sheriff Reniff's conduct in connection with Miller's

incarceration was made pursuant to his administration and

operation of the Butte County Jail, Defendants may not invoke

Eleventh Amendment immunity against Miller's claims that Sheriff

Reniff violated her civil rights.   To the extent Defendants rely

on <u>Venegas v. County of Los Angeles</u>, 32 Cal.4th 820, 839 (2004)

(holding that, for § 1983 purposes, sheriffs are state actors

protected by the Eleventh Amendment when they perform state law

enforcement duties such as investigating possible criminal

activity) to support their argument that Sheriff Reniff acted on

behalf of the state rather than the county, the Court finds this

reliance misplaced.  <u>See</u> <u>Streit</u>, 236 F.3d at 564 (because § 1983

liability implicates federal, not state law, California case law

is not controlling).  The <u>Venegas</u> decision does not overturn Ninth Circuit precedent holding that California sheriffs act as final policymakers for the county not only in managing the local jail, but also when performing some law enforcement functions. <u>See</u>, <u>e.g.</u>, <u>Brewster</u>, 275 F.3d at 812 (concluding that California sheriffs act as final policymakers for the county when investigating crimes within the county); <u>Bishop Paiute Tribe v. County of Inyo</u>, 291 F.3d 549, 562-64 (9th Cir. 2002) (concluding the California sheriffs act as county officers in obtaining and executing search warrants) vacated and remanded on other grounds by <u>Inyo County v. Paiute-Shoshone Indians of the Bishop Community of the Bishop Colony</u>, 538 U.S. 701 (2003); <u>Cortez</u>, 294 F.3d at 1192 (concluding that Sheriff was final policymaker for the county because his actions where taken pursuant to his authority as the administrator of the county jail and custodian of the inmates within it).  To the extent Defendants urge this Court to follow <u>Venegas</u> instead of Ninth Circuit precedent, the Court declines to do so.  Federal, not state law, controls the ultimate issue of whether California sheriff's are subject to liability under § 1983.  Accordingly, because under Ninth Circuit precedent Sheriff Reniff was acting on behalf of the County with respect to Miller's incarceration at the Butte County Jail, the County is subject to § 1983 liability for his actions.

D.   <u>Claim One: Punishment without Due Process of Law</u>

Miller's first claim for relief alleges that Defendants violated her Due Process rights under the Fourteenth Amendment by jailing her without a valid order.  Defendants maintain that summary judgment is appropriate with respect to this claim because Miller does not have a recognized liberty interest under the Fourteenth Amendment in participating in SWAP.

The Due Process Clause of the Fourteenth Amendment prohibits the deprivation of liberty or property without due process of law.  U.S. Const. amend. XIV § 1.  A due process claim is cognizable only if there is a recognized liberty or property interest at stake.  <u>Board of Regents of California v. Roth</u>, 408 U.S. 564 (1972).  In this case, the Court finds that Miller does not have a recognized liberty interest in participating in SWAP. Accordingly,  Miller's Due Process claim fails as a matter of law.  <u>See</u> <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1094-95 (9th Cir. 1986) (explaining that inmates have no liberty interest in work programs).  The uncontroverted evidence and authority before the Court indicates that the SWAP program is a privilege granted at the discretion of the Sheriff's Department.  Moreover, contrary to Miller's assertion, Judge

Lamb did not sentence her to SWAP,[4] nor could he have.

California state judges do not have the power to sentence a

person committed to a correctional facility to work release.

United States v. Benz, 472 F.3d 657, 659 (9th Cir. 2006)

(California state judges do not have the discretion to impose

work release under California Penal Code § 4024.2(a)) (citing

Ryan v. Comm'n on Judicial Performance, 45 Cal.3d 518, (1988)

(holding that "a judge has the power to commit a person to a

correctional facility, but then the administrative official in

charge of the facility has the discretionary power to offer work

release if the person is deemed eligible under the rules of the

program.")).[5]   Accordingly, the Court grants summary judgment in

---

[4] The Court notes that Miller's assertion that Judge Lamb
sentenced her directly into SWAP is unsupported by the evidence.
Judge Lamb sentenced Miller to 60 days in the County Jail.   In
doing so, he noted that Miller was *eligible* for SWAP;
specifically, he authorized SWAP within the discretion of the
jail.   Thus, Miller was merely referred, not sentenced, to SWAP.

[5] California Penal Code § 4024.2(a) provides, in part:

> Notwithstanding any other law, the board of supervisors
> of any county may authorize the sheriff or other
> official in charge of county correctional facilities
> to offer a voluntary program under which any person
> committed to the facility may participate in a work
> release program . . . in which one day of participation
> will be in lieu of one day of confinement.

"A person shall be eligible for work release under this section
only if the sheriff or other official in charge concludes that
the person is a fit subject therefor."   Cal.Penal Code §
4024.2(d).

favor of Defendants on Miller's first claim for relief.  To the
extent Miller contends that her Fourth and Eighth Amendment
rights were violated when she was jailed instead of allowed to
participate in SWAP, these claims do not survive summary
judgment.  Miller did not offer any evidence or authority in
support of these claims.  Accordingly, the Court grants summary
judgment in favor of Defendants on Miller's first claim for
relief.

E.    Claims Two and Three: Deliberate Indifference to Miller's
      Serious Medical Needs

      Miller's second and third claims for relief allege that
Defendants and CFMG violated her Eighth and Fourteenth Amendment
rights by knowingly and intentionally failing to provide
constitutionally adequate medical care during her incarceration
amounting to a deliberate indifference to her serious medical
needs.  Specifically, Miller contends that Defendants were
deliberately indifferent to her serious medical needs by
impeding/interfering with the medical care provided by CFMG,
including withholding her medications, destroying her medical
complaints, preventing her from reporting her medical condition
to CFMG personnel, and denying her requests to be taken to the
hospital, given a wheelchair or aspirin.  Defendants maintain
that summary judgment is appropriate with respect to these

claims because Miller cannot establish that a prison official was actually deliberately indifferent to her medical needs.

" '[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.' " <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006) (quoting <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993)). "Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment." <u>Long</u>, 442 F.3d at 1185 (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. <u>See</u> <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "wanton infliction of unnecessary pain." <u>Id.</u> (citing <u>Estelle</u>, 429 U.S. at 104). A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,' " and (2) "the prison official 'acted with deliberate indifference in

doing so.' " <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting <u>Hallett v. Morgan</u>, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).  Deliberate indifference can be manifested by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  <u>Estelle</u>, 429 U.S. at 104-05.  It may be also shown by the way in which prison physicians provide medical care.  <u>McGuckin</u>, 974 F.2d at 1059.  However, "[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."  <u>Id.</u>; <u>see</u> <u>also</u> <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 849 (1998) (holding that liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process); <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981) (holding that negligence or harassment related to medical care is insufficient to establish an Eighth Amendment violation).  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  <u>See</u> <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990).  A prisoner's mere disagreement with diagnosis or treatment does

not support a claim of deliberate indifference.   <u>Sanchez v.</u>
<u>Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989).

In the present case, the Court finds that Miller has failed
to offer sufficient evidence to create a genuine issue of
material fact on the question of whether a prison official was
deliberately indifferent to her serious medical needs.   Miller
did not point to persuasive evidence demonstrating that a prison
official deprived her of the "minimal civilized measure of
life's necessities" and acted with deliberate indifference in
doing so.   In fact, the evidence before the Court supports
Defendants contention that Miller received adequate medical
care.   Specifically, the evidence indicates that CFMG had
medical personnel on duty around the clock responsible for
administering the medical care and medication to all inmates.
The evidence further indicates that Miller was seen several
times by CFMG medical personnel and that she voluntarily chose
not to take some of her medications.   Moreover, the evidence
does not indicate that a prison official withheld her medication
or that a lack of medication caused the seizure-like symptoms
she experienced.   Miller, for her part, did not offer evidence,
beyond her own self-serving declaration, undermining Defendants
claim that she received adequate medical care.   In particular,
she did not offer evidence supporting her contention that a
prison official intentionally denied, delayed or otherwise

interfered with her access to medical care provided by CFMG or that a prison official intentionally interfered with her treatment once prescribed.   Nor did she offer evidence that a prison official knew of an excessive risk to Miller's health and safety and failed to act.   Miller, for instance, did not offer evidence showing that CFMG did not receive her Inmate Requests Forms or evidence showing that CFMG personnel actually handled her medical condition improperly.   While Miller asserts that her various medical requests were ignored, she offers no compelling evidence in support of this assertion.   Miller, for example, did not submit copies of her Inmate Request Forms, nor did she offer evidence showing that a prison official failed to notify CFMG of her medical needs.   Nor did she offer evidence from a treating physician supporting her contention that she was provided inadequate medical care.   In short, Miller's second and third claims fail because she did not direct the Court to evidence in the record corroborating the averments set forth in her declaration.   The Court finds her showing is this regard to be insufficient to create a genuine issue of material fact on the question of whether she was provided constitutionally adequate medical care.   See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (uncorroborated self-serving declaration insufficient to create a genuine issue of material fact).   Accordingly, because the evidence submitted in support

of Defendants' motion for summary judgment supports their

contention that they made reasonable efforts to accommodate

Miller's medical needs, and because Miller did not offer any

persuasive evidence indicating otherwise, the Court grants

summary judgment in favor of Defendants on Miller's second and

third claims for relief.  Finally, while CFMG did not move for

summary judgment,[6] the Court nonetheless enters summary judgment

in favor of CFMG *sua sponte* on these claims.  The Court is

authorized to grant summary judgment to a party *sua sponte* when

"the party against whom judgment [is] entered had a full and

fair opportunity to develop and present facts and legal

arguments in support of its position."  <u>Portsmouth Square Inc.</u>

<u>v. Shareholders Protective Committee</u>, 770 F.2d 866, 869 (9th

Cir. 1985).  Miller had an opportunity to develop the facts and

legal arguments on these claims in her response to the

Defendants' motion for summary judgment.

F.   <u>Claim Four: Violation of Bodily Privacy</u>

     Miller's fourth claim for relief alleges that Defendants

violated her Fourth and Fourteenth Amendment rights to bodily

privacy by placing her in a cell that exposed her body to male

and female jail staff when she was dressing and using the

---

[6] A private physician under contract with the state to
provide medical care to inmates is a state actor for purposes of
§ 1983.  <u>West v. Atkins</u>, 487 U.S. 42, 53–54 (1988).

toilet.  Defendants maintain that summary judgment is appropriate with respect to this claim because Miller did not have a constitutional right to bodily privacy in her prison cell.

In Hudson v. Palmer, 468 U.S. 517, 526 (1984), the Supreme Court held that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."  The Ninth Circuit has nevertheless recognized that prisoners do retain limited rights to bodily privacy under the Fourth Amendment. Michenfelder v. Sumner, 860 F.2d 328, 333-34 (9th Cir. 1988) ("We recognize that incarcerated prisoners retain a limited right to bodily privacy.").  However, the Ninth Circuit has stated that it is "highly questionable" whether inmates have Fourth Amendment right to be free from routine unclothed searches or viewing of their unclothed bodies by officials of the opposite sex.  Somers v. Thurman, 109 F.3d 614, 622 (9th Cir. 1997); see also Grummett v. Rushen, 779 F.2d 491, 495 (9th Cir. 1985) (finding that female guards' surveillance of inmates in their cells and showers did not constitute an unreasonable search in violation of the Fourth Amendment, even if the potential for viewing unclothed inmates was great, since the

record indicated the actual viewing to be "infrequent and irregular."); <u>Michenfelder v. Sumner</u>, 860 F.2d 328, 330, 334 (9th Cir. 1988) (holding that the Constitution does not bar female guards from occasionally being present at strip searches of men or from routinely serving on shower duty in a men's prison). In <u>Somers</u>, the Court noted that the Ninth Circuit has never held that the Constitution is violated by the mere fact of a prison official viewing the unclothed body of an inmate of the opposite sex. <u>Somers</u>, 109 F.3d at 620.

In the present case, it is clear that Miller's allegations do not implicate a Fourth Amendment right. While the Ninth Circuit recognizes that prisoners have a limited right of privacy in a prison cell, an inmate's legitimate expectations of bodily privacy are limited to claims based upon egregious conduct on the part of prison officials. <u>See</u> <u>Somers</u>, 109 F.3d at 622 n. 5 (noting that "purposeful subjection of prisoners to verbal assaults during strip searches performed by officials of the other sex serves no administrative purpose and might present a question under the Fourth Amendment"). There is nothing in the record indicating that Miller's bodily privacy claim is based upon egregious conduct on the part of a prison official amounting to an unreasonable search in violation of the Fourth Amendment. In fact, there is no evidence showing that Miller was treated differently than other inmates. Miller, for

instance, did not offer evidence demonstrating that a prison official frequently and intentionally, rather than infrequently and irregularly, viewed her unclothed body.  Accordingly, the Court grants summary judgment in favor of Defendants on Miller's fourth claim for relief predicated on a violation of her Fourth Amendment rights.  To the extent Miller asserts a Fourteenth Amendment claim based on the same conduct, this claim also fails.  Miller presented neither persuasive argument nor controlling authority in support of this claim.

G.   Claim Five: Municipal Liability

Miller's fifth claim for relief alleges that Defendants violated her Eighth and Fourteenth Amendment rights by maintaining policies, customs or practices that prevented inmates from receiving adequate diagnoses, care, and treatment.  Defendants maintain that summary judgment is appropriate with respect to this claim because Miller failed to establish an underlying constitutional violation, that is, she failed to demonstrate that a prison official was deliberately indifferent to her serious medical needs.

"To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a section 1983 plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate

indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.' " Oviatt v. Pierce, 954 F.2d 1470, 1474 (9th Cir. 1992); Anderson v. Warner, 451 F.3d 1063, 1070 (9th Cir. 2006). A municipal entity may be liable for constitutional violations resulting from its failure to supervise or train, but only where the inadequacy of the supervision and training amounts to deliberate indifference to the rights of persons with whom the police come into contact. City of Canton v. Harris, 489 U.S. 378, 388 (1989); Alexander v. City and County of San Francisco, 29 F.3d 1355, 1367 (9th Cir. 1994); see also Anderson, 451 F.3d at 1070 (a failure to train or supervise can amount to a "policy or custom" sufficient to impose liability on a municipality). To impose liability on a local governmental entity on a failure to supervise and train theory, a plaintiff must show that the alleged deficiency in supervision and training "actually caused" the constitutional deprivation at issue. Canton, 489 U.S. at 391.

In support of this claim, Miller points to the County's alleged policy of destroying Inmate Request Forms.  To establish this policy, Miller relies on the deposition testimony of Lieutenant Bryan Flicker ("Lieutenant Flicker"), who testified that the Butte County Jail did not retain inmate requests forms as part of the inmate's record after the forms were answered.

According to Flicker, Inmate Request Forms are either discarded or given back to the inmate after they are answered.  Miller claims that this policy prevented CFMG medical personnel from receiving her medical complaints, which would have prompted further review of her medical condition.  Miller maintains that this policy was sufficiently likely to result in the violation of her right to medical care that the County was deliberately indifferent to those needs.  The Court disagrees.

Even assuming Butte County Jail had a policy or practice of not retaining Inmate Request Forms, the Court finds that this practice did not amount to a deliberate indifference to the constitutional rights of Miller.  As discussed above, Miller failed to offer sufficient evidence to create a genuine issue of material fact on the question of whether a prison official acted deliberately indifferent to her serious medical needs amounting to a violation of her constitutional rights.  As such, Miller has failed to establish that municipal liability attaches under the circumstances.  To the extent Miller argues that she received inadequate medical care due to Sheriff Reniff's failure to adequately train jail medical staff to implement necessary medical policies, this claim fails for the same reason.  Miller did not offer any evidence demonstrating that Sheriff Reniff's failure to train jail medical staff caused her to suffer a constitutional violation.  Accordingly, because Miller did not

demonstrate that the County's purported policy or failure to train caused the alleged constitutional deprivation at issue, the Court grants summary judgment in favor of Defendants on Miller's municipal liability claim.

H.   Claim Seven: First Amendment Retaliation

Miller's seventh claim for relief alleges that Defendants violated her First Amendment rights by precluding her from participating in SWAP in retaliation for filing a civil rights lawsuit against the County and its employees on August 11, 2000.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).  Without evidence of all five elements, Plaintiff cannot succeed in establishing "a viable claim of First Amendment Retaliation." Rhoades, 408 F.3d at 567.

In the present case, while the filing of a civil rights action constitutes the exercise of constitutional rights, see Rhoades, 408 F.3d at 567, this claim fails because, as Miller concedes, she has no protected liberty interest in participating

in SWAP.  See Toussaint, 801 F.2d at 1094-95.  As such, it cannot be said that Defendants took an adverse action against Miller.  The uncontroverted evidence and authority before the Court indicates that the SWAP program is a privilege granted at the discretion of the Sheriff's Department.  Moreover, even assuming that Defendants took an adverse action against Miller, there is no evidence demonstrating that Defendants' actions were not motivated by a legitimate correctional goal.  "The Court must 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."  Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "The burden is on plaintiff to demonstrate 'that there were no legitimate correctional purposes motivating the actions he complains of."  Id. at 808.  Defendants argue that their actions were necessary to advance a legitimate penological goal.  Defendants maintain that the Sheriff's Department had a legitimate penological interest in requiring Miller to serve her sentence instead of participate in SWAP; namely, to prevent an inmate with a known propensity to use violence against others from working in the community.  Defendants assert that Miller's successive convictions for crimes involving violence precluded her from participating in SWAP.  In support of this assertion, Defendants offered the deposition testimony of William J. Davis, a

correctional technician at the jail office, who testified that inmates convicted of charges that related to violence would usually not be referred to the SWAP program. Defendants also offered the "Butte County Sheriff's Office Jail Information Handbook" stating that SWAP eligibility is determined by, among other things, public safety. Miller, for her part, did not offer any persuasive evidence or argument undermining the legitimate penological goal put forth by Defendants. Accordingly, the Court grants summary judgment in favor of Defendants on Miller's seventh claim for relief.[7]

I.   Supplemental Jurisdiction

Because summary judgment is appropriate on all of Miller's federal claims, only a claim based on state law remains. Thus, the question becomes whether this Court should exercise supplemental jurisdiction over Miller's medical malpractice claim against CFMG. The Ninth Circuit uses a two-part analysis to determine whether it is appropriate for a court to exercise its discretion to decline supplemental jurisdiction. See Acri v. Varian Associates, Inc., 114 F.3d 999, 1000-01 (9th Cir. 1997) (en banc). First, a court must look to whether the case falls under one of the four enumerated circumstances under 28

---

[7] Because the Court finds that Miller has failed to demonstrate that her constitutional rights were violated, it need not consider Defendants' qualified immunity argument.

U.S.C. 1367(c).  Id. at 1001.  Second, the court must consider whether the values of economy, convenience, fairness, and comity are served by retention of supplemental jurisdiction.  Id. " '[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.' "  Id. (quoting Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n. 7 (1998)).

In the present case, because all the federal claims that served as a basis for jurisdiction have been dismissed, this Court has discretion under § 1367(c)(3) to decline to exercise supplemental jurisdiction.  28 U.S.C. § 1367(c)(3).  Thus, the remaining question is whether the values of economy, convenience, fairness, and comity are served by retention of supplemental jurisdiction.  As to economy, the Court finds that it has not invested so much judicial energy in this case to justify retention of jurisdiction.  Substantial resources have not been invested in Miller's medical malpractice claim such that dismissal of this claim will result in duplication of any work by the undersigned.  As to convenience, the Court is unaware of any reason why it would be more convenient to have this case proceed in this Court rather than in state court.  As to fairness, the Court finds that a state forum will provide just as fair a proceeding as a federal one.  Finally, as to

comity, the Court finds that this factor weighs in favor of remand insofar as the remaining claim arises under state law. See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (needless decisions of state law should be avoided as a matter of comity).

In sum, this Court declines to exercise supplemental jurisdiction over Miller's remaining medical malpractice claim. The Court has dismissed all the federal claims that served as a basis for jurisdiction and the values of judicial economy, convenience, fairness, and comity, on balance, indicate that this case properly belongs in state court.  As such, the Court dismisses Miller's medical malpractice claim.  This claim is dismissed without prejudice; Miller may proceed with this claim in state court.  See Reynolds v. County of San Diego, 84 F.3d 1162, 1171 (9th Cir. 1996) (dismissal of pendent state claims following dismissal of related federal claims must be without prejudice), overruled on other grounds by Acri, 114 F.3d at 1000.

### III. ORDER

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED.  Miller's remaining medical malpractice claim against CFMG is DISMISSED without prejudice.

IT IS SO ORDERED.

Dated:  September 17, 2008

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE